UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

James Izlar, Jr.

    v.                                                    Case No. 21-cv-393-SE

Warden, FCI Berlin

**REPORT AND RECOMMENDATION**

Before the court is James Izlar, Jr.'s petition for a writ of habeas corpus under 28 U.S.C. § 2241 (hereinafter "Pet.") (Doc. No. 1), challenging a Bureau of Prisons ("BOP") disciplinary proceeding.  Mr. Izlar is incarcerated at the Federal Correctional Institute in Berlin, New Hampshire.  Pet. at 1.  The matter is here for preliminary review to determine whether the petition is facially valid and may proceed.  See Rule 4 of the Rules Governing Section 2254 Cases (hereinafter "§ 2254 Rules"); § 2254 Rule 1(b) (applying § 2254 Rules to § 2241 petitions); LR 4.3(d)(4)(A).

"Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland v. Scott, 512 U.S. 849, 856 (1994).  Because Mr. Izlar proceeds pro se, the court construes his pleadings liberally. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75–76 (1st Cir. 2014) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).

1

I.   **Background**

Mr. Izlar challenges the decision of a BOP discipline hearing officer ("DHO"), finding him guilty of violating BOP Prohibited Acts Code ("Code") 217, 28 C.F.R. § 541.3 tbl.1.  See Pet. at 3 ¶ 9.  Code 217 forbids "[g]iving money to, or receiving money from, any person for the purpose of introducing contraband or any other illegal or prohibited purpose." 28 C.F.R. § 541.3 tbl.1.  Mr. Izlar contends that the DHO should have classified his behavior as a Code 328 violation, Pet. at 2 ¶ 6, which prohibits "[g]iving money or anything of value to, or accepting money or anything of value from, another inmate or any other person without staff authorization," § 541.3 tbl.1.

The disciplinary action at issue arose from a phone call on March 11, 2020 at 2:53 PM between another prisoner, Joseph White, and "a male listed as his sibling, Andrew White[,] on his contact list."  Incident Report, Mar. 31, 2020 (Doc. No. 1 at 5 ¶ 11).  According to the March 31, 2020 Incident Report, Joseph White asked Andrew White to send Mr. Izlar money in order to protect Joseph in general population housing.  See id.  Video footage of the phone area identifies Mr. Izlar in the background while Mr. White is making his call and captures Mr. Izlar providing Mr. White with his register number.  Id.; see DHO Report (Doc. No. 1 at 7 ¶ III(D)).

According to the Incident Report, Mr. Izlar was "well aware of money being placed into his account by another inmate's family," based on a February 13, 2020 recorded telephone call that captured Mr. White "tell[ing] his brother that [Mr.] Izlar says the money still isn't there." Incident Report at 5 ¶ 11. The Incident Report further states that prisoner account records showed that, between November 17, 2018 and March 11, 2020, Andrew White deposited a total of $1,444.98 into Mr. Izlar's prisoner account. See id.

BOP staff provided Mr. Izlar with a copy of the Incident Report on March 31, 2020. Id. at ¶¶ 13-16. Based on the conduct described therein, the BOP charged Mr. Izlar with violating Code 217, and he appeared before the DHO at a disciplinary hearing on that charge on April 15, 2020. DHO Report at 6 ¶ I(B).

Prior to the hearing, the DHO advised Mr. Izlar of his rights. Id. Mr. Izlar requested and received staff representation, id. at ¶ II(B), and denied the charges, id. at ¶ III(A). He also requested that the DHO call Joseph White as a witness. Id. at ¶ III(C)(3). The DHO did not call Mr. White, however, for two reasons: first, Mr. White's DHO hearing on his disciplinary charges stemming from this incident took place at the same time as Mr. Izlar's, and second, COVID-19-related room

3

occupancy limitations prevented Mr. White from sharing the hearing room with Mr. Izlar. See id. at ¶ III(C)(4).

Mr. Izlar made a statement at his hearing about receiving money from Andrew White, saying, "I deny that it is extortion, but I admit to taking money to help [Mr. White] go to commissary because he had no commissary. I was wrong. I did wrong." Id. at 6 ¶ III(B); 8 ¶ V. The DHO pointed out that "receiving money from inmate White's family for the purpose of buying commissary items for inmate White while he was on restriction" amounted to doing so for "a prohibited purpose" in violation of Code 217. Id. at 8 ¶ V. The DHO also considered Mr. White's "statement made during his DHO hearing on April 15, 2020," which stated, in part, "I get my family to send money in to others so I can shop because I lost my commissary." Id.

After the hearing, the DHO found, "based on the greater weight of evidence, that being the written account of the incident, evidence provided, inmate White's statement, and [Mr. Izlar's] statement during the DHO hearing," that Mr. Izlar "committed the prohibited act of [C]ode 217 . . . ." Id. The DHO imposed the following penalty: disallowance of twenty-seven days of good credit time, loss of commissary and email privileges for three months, and monetary restitution of $200. Id. at ¶ VI. Mr. Izlar received a copy of the DHO Report on April 21, 2020. Id. at 9 ¶ IX. Subsequently, Mr. Izlar

4

unsuccessfully challenged the DHO's decision and resulting sanctions through the BOP administrative appeal process. See BP-10 Filing and Response (Doc. No. 1 at 11–13) (regional office appeal and denial); Extension of Time for Response (Doc. No. 1 at 14) (acknowledging central office appeal).[1]

## II.  Discussion

### A.  Due Process for Disciplinary Proceedings

"[D]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent v. Hill, 472 U.S. 445, 453 (1985) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)).  For a BOP disciplinary hearing, these due process procedural protections include "written notice of the charges at least twenty-four hours in advance of the hearing," Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005) (citing Wolff, 418 U.S. at 564), "the ability to call witnesses and present documentary evidence," id. (citing Wolff, 418 U.S. at 566), "an impartial decisionmaker," id. (citing Wolff, 418 U.S. at 570–71), and "a

---

[1] Although Mr. Izlar filed some administrative appeal documents with his petition, he did not file a response from his central office appeal.  Cf. Pet. at 11–14.  The court construes Mr. Izlar's pleadings liberally, see Foley, 772 F.3d at 75–76 (citing Erickson, 551 U.S. at 94), and assumes, for the limited purpose of this preliminary review, that he has exhausted his administrative remedies.

5

written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-67).

After a hearing, when a DHO disallows good time credits as a penalty for a Code violation, due process requires the support of that decision by "some evidence in the record." Id. The DHO's decision satisfies this standard when "any evidence in the record" exists "that could support the conclusion reached . . . ." Id. at 455-56.

**B.    Mr. Izlar's Claim**

The sole claim presented by Mr. Izlar in his § 2241 petition is that he is not guilty of a Code 217 violation. Pet. at 3 ¶ 9. Instead, Mr. Izlar suggests that the DHO should have charged with him a Code 328 violation. Pet. at 2 ¶ 6. Implicit in Mr. Izlar's claim is an argument that the DHO lacked sufficient evidence to find him guilty under Code 217, which carries a more severe penalty – the potential disallowance of thirty days more in good time credits – than Code 328. See id.; see also § 541.3 tbl.1 (providing for the loss of "up to 50% or up to 60 days, whichever is less" of good time credits for high severity offenses, like Code 217, and "up to 25% or up to 30 days, whichever is less" of good time credits for moderate severity offenses, such as Code 328).

6

Mr. Izlar correctly points out that, "where, as here, a prison disciplinary action may result in the loss of good conduct time, a prisoner is entitled to limited due process protections." Pet. at 2 ¶ 8. As discussed below, the court finds that Mr. Izlar received the limited due process protections owed to him. First, BOP staff provided Mr. Izlar with "written notice of the charges" against him when they gave him a copy of the Incident Report on March 31, 2020. See Incident Report at 5 ¶ 15; see also Surprenant, 424 F.3d at 16 (citing Wolff, 418 U.S. at 564). In compliance with due process requirements, BOP staff delivered the report to Mr. Izlar "at least twenty-four hours in advance" of the April 15, 2020 DHO hearing. DHO Report at 6 ¶ I(A)-(B); see also Surprenant, 424 F.3d at 16 (citing Wolff, 418 U.S. at 570-71).

Second, Mr. Izlar had "the ability to call witnesses and present documentary evidence." See DHO Report at 6 ¶ III(C)(1); see also Surprenant, 424 F.3d at 16 (citing Wolff, 418 U.S. at 570-71). He requested that the DHO call Mr. White as a witness; however, Mr. White

> was not called due to [his] receiving an incident report as he was directly involved in the same case and was being seen by the DHO on the same day. Also, due to the precautions for COVID-19, he would not have been in the same room at the same time.

Id. at ¶ III(C)(3). A prisoner does not have an "unrestricted right" to confront and cross-examine witnesses in the prison

7

disciplinary hearing context. Wolff, 418 U.S. at 566–68. Rather, prison officials may impose limitations on calling and making available other prisoners as witnesses, especially in support of "institutional safety or correctional goals." Id. at 566–67.

Although not constitutionally demanded, "prison officials may be required to" provide an explanation for any limitations placed on the prisoner's calling of witnesses — either in the disciplinary hearing record, "or by presenting testimony in court," if the prisoner specifically challenges the grounds for denying his access to desired witnesses. Smith v. Mass. Dep't of Corr., 936 F.2d 1390, 1399 (1st. Cir. 1991) (quoting Ponte v. Real, 471 U.S. 491, 497 (1985)). "So long as the reasons are logically related to 'institutional safety or correctional goals,' the explanation should meet the due process requirement . . . ." Id. (quoting Ponte, 471 U.S. at 497).

Here, prison officials provided reasons based on public health-related "institutional safety" concerns and the "correctional goal[]" of trying Mr. White for his disciplinary infraction. See DHO Report at 6 ¶ III(C)(3); see also Smith, 936 F.2d at 1399 (quoting Ponte, 471 U.S. at 497). Where, as here, "the disciplinary hearing record reflects a basis for the denial of [the prisoner's] request to call" another prisoner as a witness, the unavailability of the witness does not equate to

8

the denial of the prisoner's due process rights.  See Smith, 936 F.2d at 1400.  Further, Mr. Izlar does not challenge the reasons given by the DHO for not calling Mr. White.

Mr. Izlar denied the charges against him, id. at ¶ III(A), and gave a statement, id. at ¶ III(B), but did not present any other documentary evidence.  Mr. Izlar does not allege that he was prevented from providing the DHO with documentary evidence, or that he provided such evidence and the DHO declined to consider it.

Mr. Izlar does not question the DHO's impartiality, either. Cf. Surprenant, 424 F.3d at 16 (citing Wolff, 418 U.S. at 570–71).  Lastly, the DHO, serving as factfinder, provided Mr. Izlar with "a written statement . . . of the evidence relied on and the reasons for disciplinary action."  See DHO Report at 7–8 ¶ V; see also Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563–67).  In addition to the Incident Report and Mr. Izlar's statement at his hearing, the DHO considered other evidence, including: Mr. White's "statement made during his DHO hearing on April 15, 2020"; the "[r]ecorded telephone" call made by Joseph White to Andrew White on March 11, 2020 at 2:53 PM; the "FBOP Truview Phone Number Center Report for" Mr. White; the "FBOP Truview Phone Number Center Report dated January 12, 2020 – March 31, 2020"; the "FBOP Truview Inmate Center Report for Money Received for [Mr. Izlar] dated June 9, 2017 – March 21,

2020"; and video recording with a "[s]creenshot of A-3 Dayroom of phone area dated March 11, 2020, 2:59 pm." Id. at ¶ III(D).

After considering the evidence, the DHO found that "the greater weight of evidence" merited a finding that Mr. Izlar "committed the prohibited act of [C]ode 217," specifically because Mr. Izlar received money from another person for the prohibited purpose of purchasing commissary items for Joseph White while Mr. White was restricted from doing so. See id. The DHO's decision thus rested on "evidence in the record that could support the conclusion reached," Hill, 472 U.S. at 455-56, satisfying the "some evidence" standard required, id. at 454, to protect Mr. Izlar's due process rights.

Mr. Izlar's petition does not specifically claim that the disciplinary proceedings against him violated his due process rights. Construed generously, however, to assert a due process claim alleging that the evidence before the DHO was insufficient to support a finding that Mr. Izlar violated Code 217, rather than the less serious Code 328, the petition does not state a valid claim for relief. Cf. § 2254 Rule 4; LR 4.3(d)(4)(A)(i).

### III. Conclusion

For the foregoing reasons, the district judge should deny the § 2241 petition, direct that this case be closed, and direct that judgment be entered. Any objections to this Report and

Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2).

The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). "Only those issues fairy raised by the objections to" this Report and Recommendation "are subject to review in the district court and those not preserved by such objection are precluded on appeal." Id. (citations omitted).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 22, 2022

cc:  James Izlar, Jr., pro se